**Brenda K. SCHAMEL, Administratrix of the Estate of Jerry Brent Schamel, deceased, Plaintiff–Appellant,**

v.

**TEXTRON–LYCOMING, A DIVISION OF AVCO CORPORATION, Defendant–Appellee.**

**No. 92–2336.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1993.

Decided Aug. 12, 1993.

David V. Scott (argued), New Albany, IN, for plaintiff-appellant.

Ann E. Fulks, J. Bissell Roberts (argued), Stites & Harbison, Louisville, KY, Cecile A. Blau, Jeffersonville, IN, for defendant-appellee.

Before CUDAHY and MANION, Circuit Judges, and HOLDERMAN, District Judge.*

CUDAHY, Circuit Judge.

The plaintiff, the administratrix of her husband's estate, brought this wrongful death action against a manufacturer of aircraft engines and parts, alleging that the company was liable for the plane crash resulting in her husband's death. The district court granted summary judgment against the plaintiff on the ground that the action sounded in product liability and was barred by the statute of

---

* The Honorable James F. Holderman, District Judge for the Northern District of Illinois, is sitting by designation.

repose in the Indiana Product Liability Act. We affirm.

## I.

The facts relevant to this appeal and taken in the light most favorable to the plaintiff are straightforward. On January 5, 1988, the plane which Jerry Brent Schamel was piloting crashed as a result of a fatigue failure in the number five connecting rod in the plane's engine. Schamel died as a result of, the crash. The plane was a 1959 Piper Comanche, in which Schamel, his brother and a mechanic had installed a rebuilt, but previously damaged, 1959 Lycoming 540–A–1A5 engine. The connecting rods used in this engine were each designated Lycoming part # 71987.

On December 11, 1989, Brenda Schamel, the wife of the deceased, in her capacity as administratrix of her husband's estate, brought this action in Indiana circuit court for wrongful death. Brenda alleged that Textron–Lycoming, a manufacturer of reciprocating (piston-driven) engines and the manufacturer of the connecting rod in question, was liable for her husband's death because (1) Textron–Lycoming manufactured and sold defective and unreasonably dangerous connecting rods, (2) it was negligent in the manufacture and design of the rods and (3) Textron–Lycoming failed to exercise due care in discharging its obligations with respect to the proper procedures for overhauling the engine.

The defendant removed this action to federal court on diversity grounds, and subsequently filed a motion for summary judgment. The uncontradicted evidence submitted by Textron–Lycoming showed that Lycoming discontinued manufacturing connecting rods having part # 71987 in February 1964; that Lycoming connecting rods were sold exclusively by Lycoming distributors; that connecting rod part # 71987 was last sold by Lycoming to its distributors in March, 1970; that part # 71987 was not included in Lycoming's 1974 Parts List and thus was not available for purchase from Lycoming distributors after 1974; and that a substitute rod assembly design with a different part number was provided to users and consumers after 1973. Therefore, the latest that the part could have been sold was 1973—sixteen years before the commencement of the present action. Consequently, according to the defendant, the plaintiff's wrongful death action was barred by Indiana's statute of repose, which precludes product liability claims not brought within ten years of the time the product was initially delivered or sold.

The district court granted the defendant's motion for summary judgment and the plaintiff appeals. She alleges that one count of her complaint was not a product liability claim, but rather a claim under § 324A of the *Restatement (Second) of Torts,* and thus, not barred by the Indiana statute of repose. Alternatively, the plaintiff argues that the evidence did not sufficiently establish that part # 71987 could not have been sold after 1973. The plaintiff suggests that a part could have stayed on one of the distributor's shelves to be sold after 1979—bringing the present action within the ten-year window provided by the Indiana statute of repose.

## II.

The Indiana Product Liability Act provides that

> any product liability action must be commenced within two years after the cause of action accrues or within ten years after the delivery of the product to the initial user or consumer; except that, if the cause of action accrues more than eight years but not more than ten years after the initial delivery, the action may be commenced at any time within two years after the cause of action accrues.

Ind.Code § 33–1–1.5–5. The "or" in the first clause of the passage quoted above has been interpreted in the conjunctive, barring all actions occurring more than ten years after initial delivery of a product. *Dague v. Piper Aircraft Corp.,* 275 Ind. 520, 418 N.E.2d 207, 210 (1981).

The plaintiff first contends that one of her claims was not a product liability claim but an action based on § 324A of the *Restatement (Second) of Torts* and, thus, that the statute of repose did not apply to this claim.

Section 324A provides, in sum, that, when a person either gratuitously or for consideration provides services to another, he must exercise reasonable care or risk liability.[1] *See Perry v. Northern Ind. Pub. Serv. Co.*, 433 N.E.2d 44, 50 (Ind.App.1982). As evidence of her § 324A claim, the plaintiff points to the amended complaint, which alleges that the defendant failed to exercise reasonable care in providing adequate information to individuals overhauling its engines. This post-sale negligence—specifically, the failure to develop and to provide service or fatigue limits for its connecting rods in its overhaul and service manuals—she urges, is not within the scope of the Products Liability Act.

It may be that a § 324A action is not a products liability suit for purposes of the Indiana Products Liability Act, since it may be that, under Indiana Law, the injury does not result from the manufacture, construction or design of a product, but rather from the voluntarily undertaken post-sale negligent acts. *See Baker v. Midland–Ross Corp.*, 508 N.E.2d 32 (Ind.App.1987) (permitting suit against manufacturer for post-sale negligence pursuant to § 324A even though accident occurred sixteen years after sale). We need not address that issue, however, because the plaintiff has not alleged a § 324A action. The provision of service manuals and other sources of service information is not a separate and discrete, post-sale undertaking pursuant to § 324A; rather, such information is generally necessary to satisfy the manufacturer's duty to warn. *See Alexander v. Beech Aircraft Corp.*, 952 F.2d 1215, 1219–20

(10th Cir.1991); Windle Turley, Aviation Litigation § 2.09, at 70 (1986) ("Aircraft manufacturers ordinarily satisfy their postsale duty to warn through the issuance of *service bulletins* or *service letters."* (emphasis in original)).

In her amended complaint and in her brief, the plaintiff acknowledges that the defendant had a duty to provide the service information and, thus, the provision of such information was not a voluntary undertaking distinct from the obligations inherent in the initial sale of the product.[2] Accordingly, the plaintiff merely alleges that the defendant breached its continuing duty to warn by not establishing a safe fatigue life for the connecting rods. As *Dague* makes clear, however, "an action for damages resulting from the alleged failure of a manufacturer or seller to warn a user of its product's latently defective nature is certainly a product liability action [and covered by the Product Liability Act and its statute of repose]." *Dague*, 418 N.E.2d at 212. Consequently, the district court was correct in holding this claim barred.

Finally, we reject the plaintiff's contention that the evidence does not support the award of summary judgment because the defendant did not establish that a part was not left on a distributor's shelf even after Lycoming discontinued part # 71987. A defendant need not rebut any and every possible factual scenario in order to obtain summary judgment. Rather, once the defendant had shown that it stopped distributing the part in 1973, it became incumbent upon the plaintiff to create an issue of fact by making an evidentiary

---

1. § 324A states:
   One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
   (a) his failure to exercise reasonable care increases the risk of such harm, or
   (b) he has undertaken to perform a duty owed by the other to the third person, or
   (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
   Restatement (Second) of Torts § 324A (1977).

2. For example, count III of the Amended Complaint alleged "That the defendants are required

to adequately inform mechanics in the field as to the procedures to be followed to safely overhaul its engines." Moreover, paragraph 6 of the Plaintiff's Amended Contentions provided:

   6. That the defendant has an obligation to provide adequate information in an accessible and usable form concerning the guidelines to be followed in overhauling and servicing its engines, and that obligation is continuing as to all engines the defendant has manufactured that continue in service.

Finally, in her brief, the plaintiff summarized, "[i]n short, the defendant has not met its obligation to mechanics who service its engines to determine the safe service life of its connecting rods."

showing to the contrary. She did not. Her belated, unsupported hypothesis of parts in the pipeline is, in short, too little, too late.

### III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.