Gila ALTER, et al., Plaintiffs,

v.

BELL HELICOPTER TEXTRON, INC., et al., Defendants.

Civil Action Nos. H–95–5046, H–96–364.

United States District Court, S.D. Texas, Houston Division.

June 17, 1996.

Kevin David Krist, Krist, Gunn, Weller, Neumann & Morrison, Houston, TX, Marc S. Moller, Kreindler & Kreindler, New York City, for Gila Alter.

Winstol D. Carter, Jr., Fulbright & Jaworski, Houston, TX, for Bell Helicopter Textron, Inc.

Robert F. Ruckman, Jackson & Walker, Dallas, TX, for Allison Engine Company, Inc. and General Motors Corp.

## MEMORANDUM AND OPINION

ROSENTHAL, District Judge.

Pending before this court are the following motions:

- defendants' motion for summary judgment based on the General Aviation Revitalization Act ("GARA"), § 2(a), 49 U.S.C.A. § 40101, Note, § 2(a) (West Supp.1995) (Docket Entry Nos. 3, 19, and 34);[1]

- defendants' motion to dismiss for *forum non conveniens* (Docket Entry No. 16);

- plaintiffs' motions to remand to state court for lack of subject matter jurisdiction (Docket Entry Nos. 21 and 35); and

- defendants' motion to rule on the motion to dismiss for *forum non conveniens*

prior to ruling on plaintiffs' motion to remand to state court (Docket Entry No. 23).

Based on the pleadings, motions, submissions, and applicable law, this court DENIES defendants' motion to have this court rule on the motion to dismiss based on *forum non conveniens* before ruling on plaintiffs' motion to remand; DENIES plaintiffs' motion to remand; GRANTS defendants' motion for summary judgment based on GARA; and DENIES as moot the motion to dismiss based on the doctrine of *forum non conveniens,* for the reasons stated below.

## I. Background

On November 24, 1993, Ilan Alter and Abraham Gad were killed in the crash of a Bell 206 helicopter near Beit–Kama, Israel. Gila Alter ("Alter"), the surviving wife of Ilan Alter and next friend of Ron and Nitzan Alter, filed this wrongful death action in the state district court in Harris County, Texas, on August 31, 1995. Dalia Gad ("Gad"), the surviving wife of Abraham Gad and next friend of Danit and Ayelet Gad, filed a separate wrongful death action in the state district court in Harris County, Texas, on November 20, 1995. In those lawsuits, plaintiffs alleged that defendants negligently designed, manufactured, tested, and sold the helicopter and its component parts, and negligently drafted, edited, published, and sold maintenance manuals for the helicopter. Plaintiffs' theory of the case is that an engine compressor stator vane which had a propensity to prematurely fatigue and fail broke, which caused the engine to stall and the helicopter to crash, and that defendants failed to warn in the maintenance manual that the thickness of the engine compressor stator vane had to be checked at the root in order to determine the extent of wear.

Defendants Bell Helicopter Textron Inc. ("Bell") and General Motors Corporation

[1]. On October 27, 1995, defendant Bell Helicopter Textron Inc. filed a motion to dismiss for failure to state a claim upon which relief could be granted pursuant to FED R.CIV.P. 12(b)(6). (Docket Entry No. 3). On December 12, 1995, the court converted this motion to a motion for summary judgment. (Docket Entry No. 13). On February 16, 1996, defendant General Motors

Corporation joined in Bell's dispositive motion. (Docket Entry Nos. 19 and 34).

The court consolidated Civil Action No. H–95–5046 with No. H–96–364 at a motion hearing on February 9, 1996. At that hearing, the parties agreed that the motions previously filed in No. H–95–5046 would also apply to No. H–96–364.

("General Motors") removed the *Alter* case to federal court on October 27, 1995 and the *Gad* case on February 2, 1996.

Plaintiffs have moved to remand both the *Alter* and *Gad* cases. Defendants respond that this court has diversity and federal question jurisdiction. Defendants seek dismissal of both cases based on *forum non conveniens* and argue that the court should decide whether to dismiss based on *forum non conveniens* before deciding whether this court has subject matter jurisdiction. Defendants also seek summary judgment based on GARA.

## II. Defendants' Motion for a Ruling on the Motion to Dismiss for *Forum Non Conveniens* Prior to a Ruling on Plaintiffs' Motion to Remand

■ A court must determine whether it has jurisdiction over an action before considering a motion to dismiss on the ground of *forum non conveniens*. *Gulf Oil v. Gilbert*, 330 U.S. 501, 504, 67 S.Ct. 839, 841, 91 L.Ed. 1055 (1947); *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1542 (5th Cir.), cert. denied, 502 U.S. 963, 112 S.Ct. 430, 116 L.Ed.2d 449 (1991); *Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 385 (1983); *Didi v. Destra Shipping Co.*, No. 93–1851, 1993 WL 488534, at *1 (E.D.La. Nov. 19, 1993); 15 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3828 n. 30 (1986). Defendants' motion for this court to rule first on the *forum non conveniens* motion is DENIED.

## III. Plaintiffs' Motions to Remand

Plaintiffs argue that these lawsuits are not removable because the complaints do not raise a federal question and because defendant Bell is a Texas resident. Defendants argue that removal was proper because Bell was fraudulently joined and because, in the *Alter* case, plaintiffs waived their right to seek remand because they did not move to remand within thirty days from removal. Defendants also contend that these actions arise under federal law because: GARA completely preempts plaintiffs' claims; plaintiffs rely on a treaty with a foreign state to establish a cause of action; and plaintiffs seek to regulate foreign air space and invoke the federal common law of international relations.

### A. Waiver of Procedural Defects in Removal: The *Alter* Case

■ Plaintiff Alter argues that this court does not have removal jurisdiction because Bell is a resident of the forum state. Defendants argue that Alter waived her right to object to the in-state defendant's removal of this action because Alter did not file her motion to remand within thirty days of removal. The parties agree that complete diversity exists between Alter and defendants and that Bell is a Texas resident.

28 U.S.C. § 1441(b) provides as follows:

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1447(c) provides:

A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal . . .

Defendants in the *Alter* case filed their notice of removal on October 27, 1995. Alter did not file her motion to remand until January 16, 1996. Alter argues that her objection to defendants' removal of this action is not based on a procedural "defect," but is "substantive" in nature.

The Fifth Circuit has held that "[d]efects in removal procedure include, inter alia, the removal of an action that could have been filed originally in federal court but could not be removed to federal court if it were filed originally in state court." *Pavone v. Mississippi Riverboat Amusement Co.*, 52 F.3d 560, 566 (5th Cir.1995), *citing Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1544 (5th Cir. 1991), cert. denied, 502 U.S. 963, 112 S.Ct. 430, 116 L.Ed.2d 449 (1991). Because com-

plete diversity exists between Alter and defendants, Alter could have originally filed this action in federal court. The presence of an in-state defendant affects removability, not jurisdiction. Alter's motion to remand based on the presence of a defendant from the forum state is based on a procedural defect in removal. *See, e.g., In re Shell Oil Co.*, 932 F.2d 1518, 1522–23 (5th Cir.1991), *cert. denied*, 502 U.S. 1049, 112 S.Ct. 914, 116 L.Ed.2d 814 (1982). By not filing her motion to remand within thirty days, Alter waived her right to object to removal based on the presence of a defendant from the forum state.

Alter alternatively argues that she did not waive her objection to removal because she informed the court that she planned to file a remand motion. On November 15, 1995, within the thirty-day deadline, Alter filed a motion with this court which states, "[p]laintiff requires additional time to determine whether a motion to remand is appropriate." (Docket Entry No. 6, p. 2).

■ Alter does not cite any authority which expands the thirty-day window for filing her motion to remand. Federal courts strictly observe the thirty-day deadline for filing motions to remand. *In re Shell Oil Co.*, 932 F.2d at 1522–23 (holding that remand was precluded when the motion to remand was filed 33 days after the removal notice); *Elder v. Wal–Mart Stores, Inc.*, 751 F.Supp. 639, 640 (E.D.La.1990) (31 days). Strict enforcement serves the policy behind section 1447(c), to "prevent a party who is aware of a defect in removal procedure from using the defect as insurance against later unfavorable developments in federal court." *In re Shell Oil Co.*, 932 F.2d at 1522; 14A WRIGHT, MILLER, & COOPER, FEDERAL PRACTICE & PROCEDURE, § 3739 at 261 (2d ed. Supp.1995). Alter waited over 75 days after removal to file her motion to remand. The record discloses no basis on which this court should extend the deadline as Alter seeks, and the applicable authority precludes such an extension.

The motion to remand the *Alter* case is DENIED.

### B. Fraudulent Joinder: The *Gad* Case

Defendants argue that as a matter of law, GARA prevents any possibility of recovery by the *Gad* plaintiffs against Bell and that Bell's presence in this lawsuit therefore does not preclude removal.

#### 1. The Fraudulent Joinder Criteria

To demonstrate that a defendant has been fraudulently joined to defeat removal jurisdiction, the removing party bears the heavy burden of proving either that: (1) there has been outright fraud in the plaintiff's recitation of jurisdictional facts; or (2) there is no possibility that the plaintiff would be able to establish a cause of action in state court against the defendants whose citizenship prevents removal. *Burden v. General Dynamics Co.*, 60 F.3d 213, 217 (5th Cir.1995).

There is no contention that the plaintiff is guilty of actual fraud in her pleading. The only issue is whether the defendants have carried their heavy burden of showing that there is no possibility that the plaintiff has a cause of action against Bell in state court.

In determining whether a case was properly removed, a district court must not "pre-try" substantive factual issues in order to answer the discrete threshold question of whether the joinder of an in-state defendant is fraudulent. *Dodson v. Spiliada Maritime Co.*, 951 F.2d 40, 42 (5th Cir.1992); *Green v. Amerada Hess Co.*, 707 F.2d 201, 204 (5th Cir.1983), *cert. denied*, 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 546 (5th Cir.1981). The burden of persuasion placed upon those who assert "fraudulent joinder" is indeed a heavy one. In order to establish that an in-state defendant has been fraudulently joined, the removing party must show that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court. *B., Inc.*, 663 F.2d at 549. The district court must evaluate all of the factual allegations of the parties contained in their pleadings, depositions and affidavits in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff. *Id.* at 549 (collecting cases). The district court must also resolve uncertainties

as to the current state of controlling substantive law in favor of the plaintiff. *Id.* at 550.

Defendants argue that under GARA, there is no possibility that plaintiff could establish a cause of action in the Texas state court against Bell. In the Fifth Circuit, a removing party's claim of fraudulent joinder to destroy removal jurisdiction is analyzed under standards similar to a motion for summary judgment. *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir.1992); *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied,* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990). The Fifth Circuit expressly authorizes consideration of evidence outside the pleadings. *Burden,* 60 F.3d at 217; *Carriere,* 893 F.2d at 100. After all disputed questions of fact and ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned. *Burden,* 60 F.3d at 217; *LeJeune,* 950 F.2d at 271.

### 2. *GARA and the Failure to Warn*

GARA provides as follows:

[N]o civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred—

(1) after the applicable limitation period [18 years] beginning on—

(A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or

(B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft; or

(2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which

is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

49 U.S.C.A. § 40101, Note, § 2(a) (West Supp.1995).

GARA "supersedes any State law to the extent that such law permits a civil action" to be brought after the eighteen-year limitation period. 49 U.S.C.A. § 40101, Note, § 2(d). Plaintiff admits that more than eighteen years passed between the first delivery of the helicopter and the engine from the manufacturer and the accident. (Docket Entry No. 32, Affidavit of Marc Moller, Counsel for Plaintiffs, ¶ 2). The summary judgment evidence includes affidavits from Bell's and General Motors's representatives, which establish the following points:

● The engine component alleged to have failed causing the crash, was a compressor section, serial number 38228, part number 6853337. This compressor section was manufactured by the Allison Gas Turbine Division of General Motors Corp. ("Allison") on April 8, 1975 and shipped directly from Allison to Bell on April 14, 1975. The engine, serial number CAE–822569, was manufactured and assembled on April 7, 1995 and shipped from Allison to Bell on April 15, 1975.

● Bell first sold the helicopter to Chimavir Services, Ltd. in Tel Aviv, Israel, on May 20, 1975. It was delivered on or before August 30, 1975.

● After the date of delivery, neither General Motors nor Bell made any changes to the helicopter or to the compressor section of the engine.

(Docket Entry No. 3, Affidavit of Ben James Brown, Manager of Commercial Marketing Administration for Bell; Docket Entry Nos. 1 and 19, Affidavits of Jeffrey W. Edwards, Manager, Accident Investigations for Allison).

The record before this court shows that the helicopter and the engine component asserted to have caused the crash were manufactured and delivered in 1975. Under GARA, there is no possibility of recovery against Bell under Texas state law for negli-

gent design, manufacture, or testing of the helicopter and the component engine part alleged to have caused the crash. *See, e.g., Altseimer v. Bell Helicopter Textron Inc.,* 919 F.Supp. 340, 341–42 (E.D.Cal.1996).

■ Plaintiff argues that GARA does not preclude recovery against Bell under Texas law for defective marketing or failure to warn. Plaintiffs assert that Bell issued maintenance manuals within the eighteen-year limitation period, and that the manuals contained a misleading statement that proximately caused the helicopter crash. Plaintiff alleges that the maintenance manual contained instructions on how to inspect the engine compressor stator vane that, if followed, would not enable a mechanic to detect serious wear and tear in that component. Plaintiff relies on the Israeli government investigation report of the accident, which stated as follows:

> The manufacturer's instruction relating to the inspection of the engine compressor stator vanes erosion, during the periodical checks, was drafted in a misleading manner, which brought up the understanding that thickness had to be checked at the outer end rather than at the root of the vane.

(Docket Entry No. 30, Affidavit of David Fiol, Exhibit 1, p. 28).

Plaintiff submitted summary judgment evidence that either Bell, the helicopter manufacturer, or the General Motors subsidiary that manufactured the engine, reissued and revised the maintenance manual approximately twice a year since 1974. (Docket Entry No. 30, Affidavit of David Fiol, Exhibit 2). There is no evidence as to when the language criticized in the Israeli investigation report first appeared in the manual. Plaintiff argues that GARA does not apply because of the "delivery within the repose period of manuals which Israeli authorities have identified as misleading.... By refusing to apply the statute of repose under these circumstances, courts will ensure that defendants don't take lightly their obligation to incorporate new information as the manuals are republished, so that accidents do not repeat themselves needlessly and senselessly." (Docket Entry No. 29, p. 6).

Plaintiff asserts causes of action only under Texas law.[2] Plaintiff has asserted, or could assert, causes of action under Texas law for strict liability based on a marketing defect that made the helicopter unreasonably dangerous, *see Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 382 (Tex.1995); negligent failure to warn, *id.* at 384; negligent performance of an undertaking, *see* RESTATEMENT (SECOND) OF TORTS § 324A (1966); and breach of an implied and express warranty of merchantability, TEX.BUS. & COM.CODE ANN. §§ 2.314, 2.315 (Tex.UCC) (Vernon 1994).[3]

Gad alleged in her original petition that Bell and General Motors were negligent, as follows:

> (1) in carelessly designing, manufacturing, testing and selling the subject aircraft and its component parts; and (2) in carelessly and negligently drafting, editing, publishing and selling the applicable maintenance manuals.

(Docket Entry No. 1, p. 4).

Gad also alleged that the helicopter engines were defectively designed, manufactured, tested and sold in that there was a:

---

**2.** (Plaintiff's Original Complaint in the *Alter* case, Docket Entry No. 1, p. 2; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment Based on GARA, Docket Entry No. 29, p. 8–9; Plaintiff's Original Complaint in the *Gad* case, Docket Entry No. 1, p. 2).

**3.** Section 324A provides as follows:
 Liability to Third Person for Negligent Performance of Undertaking.
 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
 *Quoted in, Seay v. Travelers Indemnity Co.,* 730 S.W.2d 774, 775–76 (Tex.App.—Dallas 1987, no writ); *see also Johnson v. Abbe Eng'g Co.,* 749 F.2d 1131, 1132 (5th Cir.1984); *Ponder v. Morrison–Knudsen Co.,* 685 F.Supp. 1359, 1366 (E.D.Tex.1988).

propensity of the stator vane to prematurely fatigue and fail and the failure to prescribe appropriate and reasonable inspection procedures to detect such conditions prior to failure, and the defective manuals by Bell and General Motors created an unreasonably dangerous condition in the aircraft, its engines and component parts ...

(*Id.* at 5).

Gad also alleged a breach of an implied and/or express warranty of merchantability, which was breached by Bell and General Motors by "furnishing a helicopter and engines and relevant maintenance manuals that were not fit for the ordinary purposes for which such goods are used." (*Id.*).

Plaintiff first argues that GARA does not preclude the defective marketing or failure to warn claims because manufacturers' maintenance manuals are covered under section 2(a)(2) of GARA, which states that the eighteen-year repose period must be applied separately to "any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft. ..." Plaintiff argues that a manual revision is a "new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft" under section 2(a)(2) of GARA.

The parties cite no Fifth Circuit or Texas case involving similar facts or law. However, a similar argument has been rejected by the Tenth Circuit in a case involving a statute of repose under state law.

In *Alexander v. Beech Aircraft Corp.*, 952 F.2d 1215 (10th Cir.1991), a plane crashed after running out of fuel. The plaintiffs argued that the operator handbook issued by the defendant manufacturer was defective because it overstated the amount of usable fuel in the aircraft. The defendant manufacturer argued that Indiana's ten-year statute of repose barred the plaintiffs' failure to warn suit. The plaintiffs contended that the handbook was a "replacement part" under the statute of repose which, like the similar GARA provision, triggered a new limitations

period. The Tenth Circuit denied plaintiffs' claim, holding that the handbook was not a "replacement part," but merely "part of the evidence proffered by plaintiffs which bears on a failure to warn theory" against the defendant. *Id.* at 1220.

This result is consistent with the language of GARA. Section 2(a)(2) of GARA states that a replacement "component, system, subassembly, or other part" must replace a "component, system, ... or other part" "originally in" or "added to" the aircraft. The manual was not a "part" "originally in" or "added to" the aircraft. The manual revisions are not a replacement "component, system, subassembly, or other part" that started a new limitations period under section 2(a)(2).

This result is also consistent with the holdings of a number of federal courts applying state statutes of repose similar to GARA. These courts have held that manufacturers' maintenance and repair manuals are not a "separate" product or component upon which plaintiffs may base a claim to avoid a repose statute. *See, e.g., Schamel v. Textron–Lycoming,* 1 F.3d 655, 657 (7th Cir.1993); *Alexander v. Beech Aircraft Co.,* 952 F.2d 1215, 1220–21 (10th Cir.1991); *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1135 (6th Cir. 1986); *Butchkosky v. Enstrom Helicopter Co.,* 855 F.Supp. 1251, 1257 (S.D.Fla.1993).

In *Schamel v. Textron–Lycoming,* 1 F.3d 655 (7th Cir.1993), the plaintiff brought a wrongful death action under Indiana law against a manufacturer of aircraft engines and parts, alleging that the defendant's failure to provide adequate information in its overhaul and service manuals led to faulty repairs that in turn caused a component to fail and the plane to crash. The plaintiff alleged that the defendant failed to provide service or fatigue limits for connecting rods in the overhaul and service manuals. The defendant contended that Indiana's product liability statute of repose barred the plaintiff's claims for failure to warn. The Seventh Circuit held that the issuance of service manuals and other sources of service information was not a separate and discrete post-sale undertaking because such information is

"generally necessary to satisfy the manufacturer's duty to warn." 1 F.3d at 655. The court concluded that an action for damages resulting from a manufacturer's alleged failure to warn of a latent defect in the product was barred by the Indiana statute of repose. *Id.* at 657. The court stated as follows:

[D]efendant had a duty to provide the service information and, thus, the provision of such information was not a voluntary undertaking distinct from the obligations inherent in the initial sale of the product. Accordingly, the plaintiff merely alleges that the defendant breached its continuing duty to warn by not establishing a safe fatigue life for the connecting rods. [H]owever, an action for damages resulting from the alleged failure of a manufacturer or seller to warn a user of its product's latently defective nature is certainly a product liability action [and covered by the Product Liability Act and its statute of repose].

*Id.*

 In *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128 (6th Cir.1986), the decedent suffered severe injuries while dismantling a hoist when a sheave guard fell onto his head. The defendant argued that the lawsuit was barred by Tennessee's statute of repose for product liability actions. The plaintiff argued that the action was not barred because the defendant had sold a defective manual to the product owner within the ten-year statute of repose. The *Kochins* court held that the statute of repose barred the plaintiff's cause of action based on the theory that the manual failed to warn or provide proper instructions necessary for the safe use of the product. The court ruled that the instruction manual could not be considered a separate "product" issued within the limitation period. *Id.* at 1135.

The Sixth Circuit explained as follows:

We do not think that the Tennessee Supreme Court would interpret the word

"product"... to include the instruction manual ... Although the definition of a "product liability action" includes actions based upon the "warning" or "instruction ... of any product," and, while a failure to warn or provide proper instructions are theories upon which a plaintiff may proceed, the instructions themselves are not a "product" as defined by the act. While we agree that, under Tennessee law, a manufacturer's failure to provide proper warnings or adequate instructions for the use of its product may render the product defective or unreasonably dangerous in use, even if the product contains no manufacturing or design defect, we do not agree that the warnings and instructions themselves are a "product"... Language of instruction cannot be "defective or unreasonably dangerous" in itself.

*Id.* (citations omitted). *See also Alexander v. Beech Aircraft Co.,* 952 F.2d 1215, 1220–21 (10th Cir.1991) (holding that an instruction handbook was not a "product" under the Indiana Products Liability Act, IND.CODE ANN. § 34–4–20A–2).[4]

In *Butchkosky v. Enstrom Helicopter Co.,* 855 F.Supp. 1251, 1257 (S.D.Fla.1993), the plaintiff argued that Florida's twelve-year statute of repose for product liability claims should not bar a claim against the manufacturer for helicopter repairs performed by a third party within the twelve-year repose period. The plaintiff argued that because the repairs were done according to the manufacturers' instruction manual, and the manual was issued within the repose period, the claim was still viable. The court held that the statute of repose barred the claims, stating as follows:

To hold that [the defendant] should be liable because its manuals issued within the period of repose did not provide an adequate means of correcting the design flaw of the critical component, would be to circumvent the statute of repose by provid-

---

**4.** Under Texas law, a plaintiff can predicate a products liability action on a breach of warranty under the U.C.C. *Syrie v. Knoll Int'l,* 748 F.2d 304, 306 (5th Cir.1984); *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 423 (Tex.1984). *See also* TEX.BUS. & COM.CODE ANN. §§ 2.314, 2.315 (Tex. UCC) (Vernon 1994). An operating manu-

al, however, does not constitute "goods" within the meaning of the UCC. *Rust/Lucky v. Williams Crane and Rigging, Inc.,* No. Civ. 90–7723, 1993 WL 405853, at *5 (E.D.Pa. Oct. 4, 1993). GARA precludes a state law claim for breach of warranty because Bell's maintenance manual is not a good, but rather part of its duty to warn.

ing a back door to sue for the design flaw—ostensibly not for the design flaw itself, but for the failure of the manuals to adequately correct the flaw. The result would be the evisceration of the statute of repose. If a plaintiff is precluded by the statute of repose from suing for a design flaw in a product, the plaintiff must also be precluded from suing for a failure to correct the design flaw, whether that failure be in the inadequacy of the text of a *subsequently issued owner's manual* or in repair guidelines *subsequently sent to mechanics.*

*Id.* at 1255 (emphasis added). Because the instructions were not themselves a product under the state's product liability statute, their issuance within the repose period did not recommence the running of the statute of repose.

Plaintiff relies on *Driver v. Burlington Aviation, Inc.,* 110 N.C.App. 519, 430 S.E.2d 476, (1993), in which the plaintiffs alleged that incorrect information in the defendant manufacturer's manual concerning carburetor icing and slow-flight characteristics led to the crash of an airplane. The defendant argued that the plaintiffs' claims were barred by North Carolina's statute of repose for product liability actions. The plaintiffs contended that the statute of repose did not bar their claim because the information manual was sold separately.

The state court of appeals held that the plaintiffs' claim would not be precluded by the statute of repose if the plaintiffs could establish that the information manual had been sold within the limitations period. The court explained that the manual, and not the aircraft, was the only defective product which created the plaintiffs' cause of action. *Id.* 430 S.E.2d at 483. The reasoning of the state court of appeals in *Driver* is inconsistent with that of the other courts faced with similar claims. Moreover, in *Driver,* unlike the present case and unlike *Schamel, Alexander, Kochins, and Butchkosky,* the plaintiffs did not contend that the aircraft was in

any way defective. To the contrary, the only allegation in *Driver* was that the manual was faulty; the aircraft was properly designed and manufactured, and there was no allegation that it functioned improperly or defectively. By contrast, the plaintiff's theory in the present case, like *Schamel, Alexander,* and others, is that a specific component failed because of defective design—a propensity to prematurely fatigue and fail—and testing, and that the manual described an inspection procedure which did not correct the design flaw or allow it to be detected. Under the authorities discussed above, the suit for a failure of the manuals to correct a design flaw is precluded by the statute of repose that bars a suit for the design flaw.

■ Texas has adopted the strict product liability law set out in section 402A of the RESTATEMENT (SECOND) OF TORTS (1965). As the Texas Supreme Court recently stated, under section 402A(1) of the RESTATEMENT:

A product may be unreasonably dangerous because of a defect in manufacturing, design, or marketing. *See Turner v. General Motors Corp.,* 584 S.W.2d 844, 847 (Tex. 1979). A defendant's failure to warn of a product's potential dangers when warnings are required is a type of marketing defect. *See Lucas v. Texas Indus., Inc.,* 696 S.W.2d 372, 377 (Tex.1984). Liability will attach if the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous. *Id.*

*Caterpillar,* 911 S.W.2d at 382.

The Texas law on strict liability for manufacturing defects appears to be the same in relevant aspects as that considered by the Seventh Circuit in *Schamel v. Textron–Lycoming;* by the Sixth Circuit in *Kochins v. Linden–Alimak;* and the Tenth Circuit in *Alexander v. Beech Aircraft.*[5] These courts held that under state statutes of repose similar to GARA, the manufacturer's provision of maintenance and repair manuals was part of its duty to warn as a manufacturer. The

---

**5.** The Indiana law at issue in *Schamel* also followed section 324A of the RESTATEMENT (SECOND) OF TORTS. Under Texas law, like that of Indiana, the provision of maintenance and repair instructions is not a separate and discreet post-sale undertak-

ing creating a separate cause of action, but rather part of the manufacturer's duty to warn. *Schamel,* 1 F.3d at 657; *see also Kochins,* 799 F.2d at 1135; *Alexander,* 952 F.2d at 1220–21.

statutes of repose extinguished the manufacturers' liability arising from this duty the specified number of years after the first delivery of the product.

GARA clearly prohibits a lawsuit arising from design or manufacturing defects in an aircraft delivered more than eighteen years before the accident. As in *Alexander* and the other similar authorities noted above, plaintiff in the *Gad* case is asserting a claim of failure to warn concerning a condition in the aircraft as it was manufactured and delivered in 1975. The complaint attempts to assert this as a replacement part theory by claiming that Bell issued manuals within the repose period that did not adequately warn of the propensity of the stator vane to fatigue and fail prematurely and to prescribe proper inspection procedures to detect this design flaw. GARA precludes any recovery under state law for latent defects present at the time of manufacture. Applying the authorities cited above, GARA also precludes the possibility that plaintiff could establish a cause of action under Texas law for defective marketing or failure to warn against Bell based on allegedly misleading inspection instructions in the maintenance manual that failed to warn or allow detection of the design flaw.

■ Plaintiff also argues that GARA does not apply to accidents that occur in a foreign country, relying on *Smith v. United States,* 507 U.S. 197, 113 S.Ct. 1178, 122 L.Ed.2d 548 (1993). In *Smith,* the Supreme Court held that the Federal Tort Claims Act, 28 U.S.C. § 2680(k), did not waive the United States's sovereign immunity for tort claims arising in Antarctica. The Supreme Court based its decision in part on the "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Smith,* 507 U.S. at 204, 113 S.Ct. at 1183. *See also Boureslan v. Aramco, Arabian Am. Oil Co.,* 892 F.2d 1271, 1272 (5th Cir.1990) (en banc) (holding that Title VII does not regulate the employment practices of U.S.

employers which employ U.S. citizens outside the United States), *aff'd sub nom. EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991).

The cases relied on by plaintiff involve statutes which *create* a cause of action. GARA, in contrast, *eliminates* certain claims against aircraft and component manufacturers. Plaintiff has not cited any authority which holds that a federal statute barring enforcement of claims in courts of the United States bars only claims arising within the United States. Plaintiff's interpretation of GARA would have the anomalous effect of preventing litigants from bringing an action in the United States for an accident occurring in the United States while allowing litigants to bring the same action in the United States if the accident occurred abroad.

GARA bars civil actions arising out of accidents involving any general aviation aircraft or component part that is more than eighteen years old. Section 2(d) of GARA provides that GARA "supersedes any State law to the extent that such law permits a civil action ... to be brought after the ... limitation period." Plaintiffs state that "[t]his action is brought pursuant to the 'Wrongful Death Act' and 'Survival Act' of the State of Texas," TEX.CIV.PRAC. & REM.CODE ANN. §§ 71.001–71.011, 71.021 (Vernon 1986), and that Texas law applies. (Docket Entry No. 1, p. 2, and No. 29, pp. 8–9). GARA shows a clear intent to bar any claim based on state law, including claims based on accidents occurring outside the United States. GARA bars plaintiff's claims against Bell.

Because plaintiff has no possibility of recovery against Bell, Bell's presence in this lawsuit does not prevent removal. This court has subject matter jurisdiction over the *Gad* case.[6]

## IV. Defendants' Motion for Summary Judgment Based on GARA

Having jurisdiction over both cases, and having earlier converted the motions to dismiss into motions for summary judgment, this court now considers Bell's and General Motors' motions for summary judgment.

---

**6.** Defendants also argue that this court has subject matter jurisdiction because: (1) GARA completely preempts state law; (2) plaintiffs rely on a treaty with a foreign state to establish a cause of

action; and (3) plaintiffs seek to regulate foreign air space and invoke the federal common law of international relations. The court need not, and does not, reach these issues.

542

Based on the summary judgment record and the authorities, this court GRANTS the motion for summary judgment based on GARA, for the reasons stated in detail above. As the court stated in *Altseimer*:

Although harsh, such a result is consistent with the purpose of GARA to ... establish a Federal statute of repose to protect general aviation manufacturers from long-term liability in those instances where a particular aircraft has been in operation for a considerable number of years. A statute of repose is a legal recognition that, after an extended period of time, a product has demonstrated its safety and quality, and that it is not reasonable to hold a manufacturer legally responsible for an accident or injury occurring after that much time has elapsed.

919 F.Supp. at 342.

## V. Order

This court DENIES defendants' motion to have this court rule on the motion to dismiss for *forum non conveniens* before ruling on plaintiffs' motion to remand; DENIES plaintiffs' motion to remand; GRANTS defendants' motion for summary judgment based on GARA; and DENIES as moot the motion to dismiss based on the doctrine of *forum non conveniens*.