**John and Peta BAIN, Individually, and on Behalf of Scott BAIN, Deceased, Plaintiffs,**

v.

**HONEYWELL INTERNATIONAL, INC. and Bell Helicopter Textron Inc., Defendants.**

**No. 1:01–CV–412.**

United States District Court, E.D. Texas, Beaumont Division.

Oct. 5, 2001.

Martin White Dies, Orange, TX, Michael David Sydow of Verner, Liipfert, Bernhard, McPherson & Hand, Houston, TX, for Plaintiffs.

William Lee Maynard of Beirne, Maynard & Parsons, Houston, TX, for Honeywell International.

Winstol D. Carter Jr., Richard T. Stillwell, Jenifer, King Points, of Fulbright & Jaworski, Houston, TX, for Bell Helicopter Textron, Inc.

*ORDER DENYING PLAINTIFFS' MOTION TO REMAND, GRANTING BELL HELICOPTER TEXTRON INC.'S MOTION TO DISMISS, AND DENYING PLAINTIFFS' MOTION FOR INDEFINITE EXTENSION OF TIME TO RESPOND TO BELL'S MOTION TO DISMISS*

SCHELL, District Judge.

Before the court are the following motions and responses:

1. Plaintiffs' Motion to Remand, filed on July 11, 2001 (Dkt.# 4). Defendant Bell Helicopter Textron, Inc. ("Bell") filed a Response on July 26, 2001 (Dkt.# 7). Defendant Honeywell International, Inc. ("Honeywell") filed a Response on July 30, 2001 (Dkt.# 9). Plaintiffs filed a Reply to Defendant Bell's Response on July 31, 2001 (Dkt.# 11). Defendant Bell then filed a Supplemental Response on August 2, 2001 (Dkt.# 12). Plaintiff filed a Reply to Defendant Honeywell's Response on August 16, 2001 (Dkt.# 16).

2. Defendant Bell's Motion to Dismiss for Failure to State a Claim, filed on June 29, 2001 (Dkt.# 2). Plaintiffs filed a response on July 13, 2001 (Dkt.# 5). Defendant Bell filed a Reply on July 20, 2001 (Dkt.# 6).

3. Plaintiffs' Motion for Indefinite Extension of Time to Respond to Bell's Motion to Dismiss, filed on July 11, 2001 (Dkt.# 3). Defendant Bell filed a Response on July 26, 2001 (Dkt.# 8). Plaintiff filed a Reply on July 31, 2001 (Dkt.# 10).

Upon consideration of the parties' written submissions and the applicable law, the court is of the opinion that Plaintiffs' Motion to Remand should be DENIED, Defendant Bell's Motion to Dismiss should be GRANTED, and Plaintiffs' Motion for Indefinite Extension of Time to Respond should be DENIED.

## I. BACKGROUND

Scott Bain ("Bain") was killed in a helicopter accident near Helmet, British Columbia, Canada on June 1, 2000. His parents, John and Peta Bain ("Plaintiffs"), filed survival and wrongful death actions against Bell and Honeywell on March 31, 2001 in the 128th Judicial District Court of Orange County, Texas. Plaintiffs allege that the helicopter accident was caused by the fracture of defective retaining screws on the fuel control unit, which caused the

unit to leak fuel into the engine compartment and the engine to lose power.

Specifically, Plaintiffs allege that Bell is liable for Bain's death based on (1) strict liability for defective design, manufacture, and marketing; (2) negligent design, testing, manufacture, and marketing; (3) negligent failure to warn; and (4) negligent undertaking.[1]

The helicopter involved was a Bell model 206, manufactured by Bell and delivered to the first purchaser on or before July 31, 1971. Bell alleges that it did not modify or alter the helicopter after delivery. Honeywell's predecessor in interest, Bendix, manufactured the fuel control unit that was in the engine of the helicopter at the time of the accident. After manufacture, Bendix delivered the fuel control unit to the Detroit Diesel Allison Division of General Motors Corporation ("Allison"), who placed it on an engine and sold the engine and unit to Societe Nationale Industrielle Aerospatiale in France. Bell alleges that the helicopter did not contain the Allison engine with the Bendix fuel control pump at the time Bell shipped it to the first customer.

Plaintiffs allege that Bell investigated defective screws being used in its helicopters. They cite three separate occasions prior to the accident in question in which retaining screws on the fuel control unit of a Bell 206 were reported to be fractured after inspection. According to Plaintiffs, the Federal Aviation Regulations require Bell to investigate and report potential problems such as flammable fluid leakage

in areas where an ignition source normally exists.

Before his death, Bain was a citizen of Australia. Plaintiffs are citizens of Australia. Honeywell is incorporated under the laws of Delaware, with its principle place of business in New Jersey. Bell is a corporate citizen of Texas.

Defendants removed the lawsuit to this court pursuant to 28 U.S.C. § 1441(a) based on diversity of citizenship under 28 U.S.C. § 1332(a), and federal question jurisdiction under 28 U.S.C. § 1331. Defendants contend that Plaintiffs fraudulently joined Bell to prevent removal under 28 U.S.C. § 1441(b) because all claims asserted against Bell are barred as a matter of law by the statute of repose established in the General Aviation Revitalization Act of 1994 ("GARA"). 49 U.S.C.S § 40101, Note, § 2(a) (Lexis 1998). Furthermore, Defendants argue that the action arises under federal law because GARA completely preempts Plaintiffs' claims against Bell.

Plaintiffs filed a Motion to Remand on July 11, 2001. In their Motion, Plaintiffs contend that a procedural defect in removal exists because there is some possibility of asserting a claim against Bell; therefore, Bell is not fraudulently joined. Moreover, Plaintiffs argue that the case does not arise under federal law. The court must determine whether Plaintiffs fraudulently joined Bell in order to prevent removal, and whether the court has jurisdiction over this lawsuit.

---

1. The parties ardently debate whether Plaintiffs' validly pled a cause of action for negligent undertaking in their Original Petition filed in state court. Bell maintains that Plaintiffs' failed to assert facts sufficient to state a claim for negligent undertaking and that they first did so in their Motion to Remand. Texas State Courts, however, maintain liberal notice pleading requirements. TEX R. CIV. P. 45(b). Under notice pleading, plaintiffs are required

to make a "very brief statement, designed merely to give notice to the opponent." Robert W. Stayton, *The Scope and Function of Pleading Under the New Federal and Texas Rules*, TEX R. CIV. P. 45 (Vernon 1979). Taken as a whole, Plaintiffs' allegations in their Original Petition are sufficient to put Defendants on notice of a claim for negligent performance of an undertaking. Pls.' Original Pet. at 3.

## II.  REMOVAL STANDARD

■■■  A party has the right to remove a case to federal court when federal jurisdiction exists and removal procedure is properly followed.  28 U.S.C. § 1441.  The removing party bears the burden of establishing that a state court suit is properly removable to federal court.  *Carpenter v. Wichita Falls Indep. Sch. Dist.,* 44 F.3d 362, 365 (5th Cir.1995).  The federal removal statute should be strictly construed since it deprives a state court of a case properly before it, thereby implicating important federalism concerns.  *Id.* at 365.  Any doubts regarding the propriety of removal are resolved in favor of remand to state courts.  *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941).

■■■  Removal is proper in diversity of citizenship cases "only if none of the parties in interest properly joined and served . . . is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).  A motion to remand based on the presence of a defendant from the forum state is based on a procedural defect in removal.  *Alter v. Bell Helicopter Textron, Inc.,* 944 F.Supp. 531, 534–35 (S.D.Tex.1996).

## III.  FRAUDULENT JOINDER

### A.  *Standard*

■■■  To establish that a defendant is fraudulently joined to defeat removal jurisdiction, the removing party bears the heavy burden of proving either of the following: (1) there has been outright fraud in the plaintiffs' recitation of jurisdictional facts; or (2) there is no possibility that the plaintiffs would be able to establish a cause of action in state court against the defendants whose citizenship prevents removal.  *Burden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir.1995); *see also Lackey v. Atlantic Richfield Co.,* 990 F.2d 202, 207 (5th Cir.1993) (holding a party cannot be joined to prevent removal where

no cause of action can be brought against that party).  Defendants do not argue that Plaintiffs are guilty of outright fraud in their pleadings.  They contend that there is no possibility Plaintiffs can present a valid state law cause of action against Bell.  Therefore, according to Defendants, Bell is fraudulently joined and removal was proper.

■■■  In determining whether a defendant's joinder is fraudulent, courts may consider the parties' pleadings, affidavits, depositions, and other evidence outside of the pleadings.  *Cavallini v. State Farm Ins. Co.,* 44 F.3d 256, 263 (5th Cir.1995).  The court must resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.  *Rodriguez v. Sabatino,* 120 F.3d 589, 591 (5th Cir.1997); *Burden,* 60 F.3d at 217–18.

### B.  *Plaintiffs' Claims For (1) Strict Liability For Defective Design, Manufacture, And Marketing; (2) Negligent Design, Testing, Manufacture, And Marketing; And (3) Negligent Failure To Warn*

Defendants can prove fraudulent joinder by demonstrating that Plaintiffs have no possibility of establishing a claim against Bell.  Defendants argue that Plaintiffs failed to assert a claim against Bell because GARA applies to this action and precludes all of Plaintiffs' claims.  GARA is a statute of repose which prohibits lawsuits against aircraft manufacturers arising out of accidents involving any general aviation aircraft or component part which is more than eighteen years old.  49 U.S.C.S. § 40101, Note, §§ 1, 2.  Section 2(a) of GARA sets forth the legislation's basic limitation on civil actions as follows:

> [N]o civil action for damages for death or injury to persons or damage to property arising out of an accident involving

a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred—

(1) after the applicable limitation period [18 years] beginning on—

(A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or

(B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft; or

(2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

49 U.S.C.S. § 40101, Note, § 2(a)(1), (2).

The above section defines the limitation period as eighteen years. In addition, section 2(d) provides that GARA "supersedes any State law to the extent that such law permits a civil action" to be brought after the eighteen-year limitation period. *Id.* at § 40101, Note, § 2(d); *see also Alter v. Bell Helicopter Textron, Inc.,* 944 F.Supp. 531, 541 (S.D.Tex.1996) ("GARA shows a clear intent to bar any claim based on state law . . . ."). Nonetheless, GARA's prohibitions are "limited to civil actions brought against a manufacturer 'in its capacity as manufacturer.'" H.R.Rep. No. 103–525(II), § 2 (1994), reprinted in 1994 U.S.C.C.A.N. 1638, 1648–49 ("The . . . limitation is intended to insure that parties who happen to be manufacturers of an aircraft or a component part are not im-

munized from liability they may be subject to in some other capacity.").

■■■ Bell has provided evidence establishing that the helicopter was manufactured and delivered to the first purchaser on or before July 31, 1971, and that it has not modified the helicopter since delivery. Further, it is undisputed that Bell did not design, manufacture, sell, or install the engine or main fuel control unit that was in the helicopter at the time of the accident. Because the accident occurred on June 1, 2000, more than twenty-eight years had passed since delivery of the helicopter to the first purchaser. Thus, GARA precludes Plaintiffs from recovering against Bell under Texas state law for the following claims: (1) strict liability for defective design, manufacture, and marketing; (2) negligent design, testing, manufacture, and marketing; and (3) negligent failure to warn. *See Alter,* 944 F.Supp. at 536–41 (S.D.Tex.1996) (holding the plaintiffs could not establish a valid claim in a lawsuit involving a helicopter accident because GARA prohibits Texas state law claims arising from design or manufacturing defects in an aircraft delivered more than eighteen years before the accident); *see also Altseimer v. Bell Helicopter Textron, Inc.,* 919 F.Supp. 340, 342 (E.D.Cal. 1996) (opining GARA prohibits state law claims against a helicopter manufacturer when the accident in question occurred more than eighteen years after manufacture). The court finds that Plaintiffs asserted these claims against Bell in its capacity as a helicopter manufacturer; therefore, each is barred by GARA as a matter of law.

C. *Plaintiffs' Negligent Undertaking Claim*

The next inquiry for the court is whether Plaintiffs' have any possibility of establishing a viable cause of action for negli-

gent undertaking against Bell in state court.[2]

To resolve this issue, the court must examine whether Bell undertook any duty to Bain, and whether Bell has a duty under the Federal Aviation Regulations ("FARs") to investigate fractured screws on fuel control units installed in Bell 206 helicopters.

■ Texas law generally imposes no duty to take action to prevent harm to others absent special circumstances. *See Torrington,* 46 S.W.3d at 837 (internal citations omitted). The Texas Supreme Court, however, has recognized a cause of action for negligent undertaking, which is defined as a "duty to use reasonable care ... when a person undertakes to provide services to another, either gratuitously or for compensation." *Id.* This cause of action was derived from section 323 of the *Restatement,* which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 323 (1965).

■ As a basis for this claim, Plaintiffs allege that Bell voluntarily undertook a duty to Bain when it investigated and/or acquired information about defective screws used in its helicopters in the past. They list three occasions before the accident in which retaining screws on fuel control units installed in Bell 206 helicopters were fractured in a manner similar to the screws that caused the accident.[3] Plaintiffs maintain that, pursuant to the FARs, Bell has a duty to investigate and report potential problems, such as engine failure and/or flammable fluid leakage in areas where an ignition source exists because Bell is the type certificate holder for Bell 206 helicopters. For this reason, they conclude Bell must have investigated and/or acquired information about the above three occurrences. Plaintiffs, however, offer no evidence in support of this assertion. Instead, they reason that since Bell has a duty to investigate and report under the FARs, it must have done so;

2. The court treats this claim differently from those analyzed above as it is unclear whether the GARA limitation period applies to a cause of action for negligent undertaking under Texas state law. As previously mentioned, GARA only precludes lawsuits brought against an aircraft manufacturer *in its capacity as a manufacturer* arising out of accidents involving any general aviation aircraft which is more than eighteen years old. 49 U.S.C.S. § 40101, Note, § 2(a). Plaintiffs argue that their negligent undertaking claim is not precluded by GARA because they are not asserting it against Bell in its capacity as the helicopter's manufacturer. *See Torrington Co. v. Stutzman,* 46 S.W.3d 829, 836 (Tex.2000). In *Torrington,* the Texas Supreme Court stated that a claim for negligent undertaking against a bearing manufacturer was not based upon

its status as the bearing's manufacturer. It is uncertain, however, whether the rule in *Torrington* would apply to Plaintiffs' negligent undertaking claim in this case because GARA preemption was not an issue in *Torrington.*

3. In their Reply to Bell's Response to the Motion to Remand, Plaintiffs' allege that (1) on July 25, 1992, retaining screws on a bypass cover on the fuel control unit of a Bell 206 were fractured, allowing the cover to open and spill fuel; (2) on July 28, 1992, a screw that secures the bypass retaining plate to the fuel control unit of a Bell 206 was discovered to be fractured during an inspection; and (3) in March of 1995, a screw that secures the bypass retaining plate to the fuel control unit of a Bell 206 was discovered to be fractured.

therefore, Bell negligently undertook a duty to instruct Bain about the screws.[4] The court finds this reasoning flawed and unpersuasive.

On the other hand, Bell claims that it first learned of the use of nonconforming screws in the repair of the fuel control units after the accident involving Bain,[5] and that it was under no duty to investigate and report the use of such screws at any time. Plaintiffs insist that these disparate allegations raise a factual dispute that should be resolved in their favor. The court, however, finds no factual dispute because Plaintiffs fail to assert any facts demonstrating Bell investigated the screws. In fact, Plaintiffs' assertion is founded solely on an inference drawn from the assumption that Bell has a legal duty to investigate and report fractured screws on fuel control units installed in Bell 206 helicopters. This inference is based on a conclusion of law, not fact. Accordingly, Plaintiffs fail to demonstrate that Bell voluntarily undertook a duty to Bain. Thus, for Plaintiffs to show that there is a possibility they would be able to establish a negligent undertaking claim against Bell in state court, they must prove, at least, that Bell has an affirmative duty to investigate and report the fractured screws.

▇▇ Bell alleges that it has no such duty because it is not the type certificate holder for the units that housed the screws. A type certificate is a certificate issued by a government agency to an aircraft or component part manufacturer to reflect the agency's determination that the aircraft or component part meets applicable regulatory standards. *See, e.g., Nolan v. Boeing Co.,* 736 F.Supp. 120, 124 (E.D.La.1990). The language of the FARs shows that separate and distinct type certificates are issued to manufacturers of aircraft, aircraft engines, and other aircraft component parts. *See* 14 C.F.R. §§ 21.3, 21.17. The holder of a type certificate has a duty to report any failure, malfunction, or defect in any product, part, process, or article manufactured by it that it determines has resulted in problems, including fires caused by a system or equipment failure, flammable fluid leakage in areas where an ignition source normally exists, and engine failure. 14 C.F.R. § 21.3(a), (c)(1), (6), (10).

Bell admits that it holds the type certificate for model 206 helicopters, however, it offers undisputed evidence showing that it is not the type certificate holder for the engine and fuel control unit implicated in the accident involving Bain.[6] Further, Plaintiffs present no evidence proving Bell is, or ever was, the type certificate holder for the engines and fuel control units mentioned in the three prior incidents concerning fractured retaining screws. Thus, under the facts presented in this case, Bell has no duty under the FARs to investigate and report engine failure or fractured retaining screws on fuel control units installed in Bell 206 helicopters because it did

---

4. Plaintiffs reason that "the evidence, when viewed in light of Bell's obligations under the FARs, establishes that Bell must have initiated an investigation of the defective screws in Bell 206 rotorcraft (as is required by the FARs) prior to the 2000 crash made the basis of this suit." Plt.'s Reply to Def. Bell's Resp. to Mot. to Remand ¶ 8.

5. Bell supports its factual assertion with the affidavit of David W. Dodson, which states "[p]rior to the accident at Helmet, BC, Bell could not have known about potential problems created by nonconforming AN503–8–8 screws that were installed in some limited number of fuel control units that were repaired or overhauled after 1995 by entitles other than Bell." Dodson Aff. ¶ 23.

6. The Dodson affidavit establishes that "Bell is not the 'engine type certificate holder' under the Federal Aviation Regulations for the engine and its component parts, including the DP–N2 main fuel control." Dodson Aff. ¶ 24.

not hold the type certificate for the parts at issue.

To the extent Plaintiffs allege that Bell investigated the screws after the accident involving Bain, the uncontroverted facts confirm that it did not.[7] Consequently, Bell did not negligently undertake a duty to Bain before or after the accident. Thus, there is no possibility Plaintiffs would be able to establish a negligent undertaking claim against Bell in state court because Plaintiffs failed to put forth evidence demonstrating that Bell voluntarily investigated the fractured screws, and Bell has no duty to do so under the FARs.

## V. CONCLUSION

After resolving all questions of fact and ambiguities in the controlling state law in favor of Plaintiffs, the court concludes that Bell is fraudulently joined because there is no possibility of recovery against it under Texas state law. Accordingly, Bell must be dismissed as a party to this action. Thus, this case was properly removed pursuant to 28 U.S.C. § 1441 because the parties are completely diverse, and no procedural defect in removal exists.

Therefore, Plaintiffs' Motion to Remand is hereby DENIED. Defendant Bell's Motion to Dismiss is hereby GRANTED. Additionally, Plaintiffs' Motion for Indefinite Extension of Time to Respond is DENIED. It is so ORDERED.

---

**7.** The Dodson affidavit unequivocally states that "Bell did not participate in the TSB's and Honeywell's investigation of potential problems created by the installation of nonconforming screws during overhaul of fuel control units." Dodson Aff. ¶ 22.