# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SLOBODANKA BLAZEVSKA, surviving
spouse and personal representative
of the Estate of Risto Blazevski,
deceased; ELEONORA BLAZEVSKA,
surviving child of Risto Blazevski,
deceased; DIMITAR BLAZEVSKI,
surviving child of Risto Blazevski,
deceased; DRAGAN BOSKOVIK, as
surviving spouse and personal
representative of the Estate of
Dimka Ilkovka-Boskovik,
deceased, and as guardian of their
minor child Ana Boskovik;
VESELIN BOSKOVIK, surviving child
of Dimka Ilkovka-Boskovik,
deceased; BILJANA BOZINOVSKA, as
surviving spouse and personal
representative of the Estate of Ace
Bozinovski, deceased and as
guardian of their two minor
children, Stefan and Andrej
Bozinovski; VESENA IVANOSKA, as
surviving spouse and personal
representative of the Estate of
Branko Ivanovski, deceased and as
guardian of their two minor
children, Marta Ivanovska and
Andrej Ivanovski; MIRJANA
GLAVCIC-KRESTEVSKA, as surviving
spouse and personal representative

No. 06-16028
D.C. No.
CV-05-04191-PJH
OPINION

3755

of the Estate of Mile Krestevski, deceased; VLADIMIR KRESTEVSKI, surviving child of Mile Krestevski, deceased; VIOLETA MARKOVSKA, as surviving spouse and personal representative of the Estate of Marko Markovski, deceased; ZORAN MARKOVSKI; GORAN MARKOVSKI, surviving children of Marko Markovski, deceased; VILMA TRAJKOVSKA, as surviving spouse and personal representative of the Estate of Boris Trajkovski, deceased, and as guardian of their two minor children, Sara Trajkovska and Stefan Trajkovski; ZLATKA VELINOVA, as surviving spouse and personal representative of the Estate of Boris Velinov, deceased; JOVANCE VELINOV; OLGA VELINOVA, surviving parent of Boris Velinov, deceased,

*Plaintiffs-Appellants,*

v.

RAYTHEON AIRCRAFT COMPANY, a Kansas Corporation,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted
February 14, 2008—San Francisco, California

Filed April 10, 2008

Before: Dorothy W. Nelson and Michael Daly Hawkins,
Circuit Judges, and Robert J. Timlin,* Senior Judge.

Opinion by Judge D.W. Nelson

---

*The Honorable Robert J. Timlin, Senior United States District Judge
for the Central District of California, sitting by designation.

**COUNSEL**

Robert J. Nelson, Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, California, for the appellants.

Kirk C. Jenkins, Sedgwick, Detert, Moran & Arnold LLP, Chicago, Illinois, for the appellee.

## OPINION

D.W. NELSON, Senior Circuit Judge:

Slobodanka Blazevska and her co-appellants are the family members of eight Macedonian residents who died in a plane accident in Bosnia on February 26, 2004. The decedents, including the Macedonian president, were killed when their Beechcraft Super King Air 200 crashed into a hilltop. The plaintiffs brought a wrongful death action against Raytheon, the manufacturer of the plane. The district court granted summary judgment for the defendants, holding that plaintiffs' action was barred by the eighteen-year statute of repose in the General Aviation Revitalization Act of 1994 ("GARA"). Pub. L. No. 103 298, 108 Stat. 1552 (codified at 49 U.S.C. § 40101 notes). The plaintiffs appealed, arguing that the presumption against extraterritoriality precludes GARA's application in this case. We affirm the order of the district court granting summary judgment for appellee Raytheon. The presumption against extraterritoriality is not implicated in this case, so GARA bars appellants' suit.

### FACTUAL AND PROCEDURAL BACKGROUND

In early 1980, appellee Raytheon Aircraft Company ("Raytheon") manufactured a Beech Super King Air 200 Aircraft in Wichita, Kansas. Around April 4, 1980, Raytheon sold the aircraft to "The Beechcraft Organization for Central Europe." Later that month, the aircraft was delivered to the Republic of Macedonia, which retained ownership of the plane until its eventual destruction.

On February 26, 2004, the aircraft departed Skopje, Macedonia, bound for Mostar, Bosnia, with the President of Mace-

donia and his senior advisors aboard. In a thicket of rain and fog, the plane struck a tree while attempting to land. The accident killed all nine passengers, including the two co-pilots. The Aircraft Accident Report, prepared by the Bosnia and Herzegovina Directorate of Civil Aviation, ultimately attributed the crash to pilot error.

On October 17, 2005, appellants filed a wrongful death action against Raytheon. The complaint alleged three causes of action, all under Macedonian law, claiming the aircraft was defective and not crashworthy. On November 10, 2005, Raytheon filed its answer, denying the allegations and raising a number of affirmative defenses. Raytheon contended that the action was barred by GARA's eighteen-year statute of repose. The parties agreed to proceed with limited discovery until the district court resolved the issue of whether GARA applied. On February 15, 2006, Raytheon filed a motion for summary judgment, again asserting that GARA required a finding in its favor. On May 12, 2006, the district court issued an order granting Raytheon's motion for summary judgment, holding that GARA precluded the plaintiffs' claims. On that same day, the court entered judgment in favor of Raytheon on all claims.

## JURISDICTION

Federal diversity jurisdiction is proper under 28 U.S.C. § 1332(a)(2). Appellants are all Macedonian citizens, appellee is a Kansas corporation, and the amount in controversy exceeds seventy-five thousand dollars. This court has jurisdiction to review the final judgment of a district court under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment that was based upon uncontested facts and a disputed construction of a federal statute. *Boyd v. United States*,

762 F.2d 1369, 1371 (9th Cir. 1985). We must determine whether the district court correctly applied the relevant substantive law. *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 938 (9th Cir. 2006) ("We also review de novo a district court's interpretation and construction of a federal statute."); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

## *DISCUSSION*

### I.  *Legal Standard — GARA*

**[1]** GARA is a statute of repose that limits aircraft manufacturers' liability to eighteen years after an aircraft is delivered. GARA §§ 2(a), 3(3). In 1994, Congress enacted this measure to limit the "long tail of liability" imposed upon the manufacturers of general aviation aircraft. *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1084 (9th Cir. 2001) (citing H.R. Rep. No. 103-525, pt. I, at 1-4 (1994), as *reprinted in* 1994 U.S.C.C.A.N. 1638, 1638-41). Congress was "deeply concerned about the enormous product liability costs" suffered by manufacturers. *Id.* The pertinent sections of GARA provide:

> Section 2. Time limitations on civil actions against aircraft manufacturers.
>
>   (a) In general. — Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred —
>
> > (1) after the applicable limitation period beginning on —

(A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or

(B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft . . . .

Section 3. Other definitions.

For the purposes of this Act —

. . . .

(3) the term "limitation period" means 18 years with respect to general aviation aircraft and the components, systems, subassemblies, and other parts of such aircraft . . . .

GARA §§ 2(a), (3)(3).

**[2]** The statute bars suits stemming from accidents that occurred more than eighteen years after the initial transfer of an aircraft. *Lyon*, 252 F.3d at 1084 ("If [the accident] occurs on the day after the GARA period runs, no action whatsoever is possible."). The statute acts not just as an affirmative defense, but instead "creates an explicit statutory right not to stand trial." *Estate of Kennedy v. Bell Helicopter Textron, Inc.*, 283 F.3d 1107, 1110 (9th Cir. 2002).

The accident at issue here occurred in 2004, more than eighteen years after appellee delivered the plane to the Macedonian government in 1980. Accordingly, Raytheon argues that GARA bars appellants' claims. Appellants counter that, in accord with the the presumption against extraterritoriality, GARA's time bar should not apply under the circumstances of this case.

II.  *The Presumption Against Extraterritoriality*

**[3]** "The Supreme Court and this court have adhered to the longstanding principle of American law that legislation is presumed to apply only within the territorial jurisdiction of the United States unless the contrary affirmative intention of Congress is clearly expressed." *ARC Ecology v. U.S. Dep't of the Air Force*, 411 F.3d 1092, 1097 (9th Cir. 2005) (citing *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) (hereinafter "*Aramco*")); *see also Smith v. United States*, 507 U.S. 197, 203-04 (1993) (holding that the presumption applied to preclude application of the Federal Tort Claims Act's ("FTCA") waiver of sovereign immunity for a claim arising in Antarctica).

**[4]** Under this presumption, a law passed by Congress is generally assumed to apply only to regulate conduct occurring within the boundaries of the United States. *See Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1077-79 (9th Cir. 2006); *Envtl. Def. Fund, Inc. v. Massey*, 986 F.2d 528, 530-31 (D.C. Cir. 1993). The presumption "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *Aramco*, 499 U.S. at 248 (internal quotation marks omitted). In order to overcome the presumption, a party must show a clear expression of congressional intent to apply a statute beyond American soil. *Id.* at 258.

In *Aramco*, the centerpiece of the Supreme Court's recent jurisprudence on the presumption, the Court held that Title VII of the Civil Rights Act of 1964 did not apply to a United States citizen working for an American company in a foreign country. *Id.* at 249. Despite administrative interpretations to the contrary, the Court held that it must assume that Congress legislates under the presumption that a statute "is primarily concerned with domestic conditions." *Id.* at 248. The Court further held that the presumption was not overcome because Congress did not make a "clear statement" suggesting that

Title VII should apply to conduct occurring in a foreign country. *Id.* at 258.

III. *Presumption Against Extraterritoriality Does Not Apply To GARA*

**[5]** Simply because a case's factual background involves some conduct occurring abroad does not mean that every statute governing the matter is subject to the presumption against extraterritoriality; a court must first inquire into whether applying a statute implicates any issue of extraterritoriality. *Massey*, 986 F.2d at 531-32. This requires considering the conduct the statute seeks to regulate. *See id.*; *see also Pakootas*, 452 F.3d at 1077 ("The difference between a domestic application of United States law and a presumptively impermissible extraterritorial application of United States law becomes apparent when we consider the conduct that the law prohibits."). Appellants contend that the conduct at issue in this case is a tort injury suffered in Macedonia. Under their logic, the place where the tort claim arises determines whether the various federal statutes governing a case are being applied extraterritorially. Appellants' reasoning oversimplifies the analysis.

In *Massey*, an environmental group brought a suit under the National Environmental Policy Act ("NEPA"), attempting to enjoin a federal agency from permitting the incineration of food waste in Antarctica. 986 F.2d at 529. Writing for the D.C. Circuit, Chief Judge Mikva stated:

> [T]he presumption against extraterritoriality is not applicable when the conduct regulated by the government occurs within the United States. By definition, an extraterritorial application of a statute involves the regulation of conduct beyond U.S. borders. Even where the significant effects of the regulated conduct are felt outside U.S. borders, the statute itself does not present a problem of extraterri-

toriality, so long as the conduct which Congress seeks to regulate occurs largely within the United States.

*Id.* at 531 (citing Restatement (Second) of Foreign Relations § 38 (1965)). The court concluded that "NEPA is designed to control the decisionmaking process of U.S. federal agencies, not the substance of agency decisions." *Id.* at 532. As a result, NEPA regulates domestic conduct because the federal agency's decisionmaking process occurs within the United States. *Id.* at 533. As summarized by Chief Judge Mikva, "since NEPA is designed to regulate conduct occurring within the territory of the United States, and imposes no substantive requirements which could be interpreted to govern conduct abroad, the presumption against extraterritoriality does not apply to this case." *Id.*

**[6]** Here, appellants have failed to show that an application of GARA would impermissibly regulate conduct that has occurred abroad. GARA only regulates the ability of a party to seek compensation from general aviation airplane manufacturers in American courts. *See* GARA § 2(a). It is not a statute governing the substantive standards involved in tort claims. GARA merely eliminates the power of any party to bring a suit for damages against a general aviation aircraft manufacturer, in a U.S. federal or state court, after the limitation period. The only conduct it could arguably be said to regulate is the ability of a party to initiate an action for damages against a manufacturer in American courts — an entirely domestic endeavor. Congress has no power to tell courts of foreign countries whether they could entertain a suit against an American defendant. It would be up to any foreign court to determine whether it wanted to apply GARA to litigation occurring within its borders. Accordingly, the presumption against extraterritoriality simply is not implicated by GARA's application.

Appellants attempt to differentiate *Massey* from the present case because the former was not a tort action. Appellants

argue that *Massey* is distinguishable because it depended upon the conclusion that NEPA is a procedural regulation of a federal agency rather than a substantive rule of law. This is misleading. *Massey* did recognize that "NEPA is designed to control the decisionmaking process of U.S. federal agencies, not the substance of agency decisions." *Massey*, 986 F.2d at 532. But that recognition was not intended to suggest that there is something meaningful in the distinction between procedural and substantive laws. Rather, what was determinative for the D.C. Circuit was the locus of the conduct regulated by the statute — in that case, the agency's decisionmaking. *See id.* at 533. As the court noted, "[b]ecause the decisionmaking process of federal agencies take place almost exclusively in this country and involve the workings of the United States government, they are uniquely domestic." *Id.* at 532. As reasoned by *Massey*, when deciding whether a statute implicates the presumption against extraterritoriality, courts must determine whether application of that statute would govern conduct occurring abroad. *Id.* at 533. Appellants have failed to show that GARA regulates any non-domestic conduct, because GARA only determines the scope of a manufacturer's liability in American courts.

**[7]** Appellee's position finds further support in the only opinion issued by a federal court to consider explicitly the application of GARA to an accident that occurred abroad. *See Alter v. Bell Helicopter Textron, Inc.*, 944 F. Supp. 531 (S.D. Tex. 1996).[1] In *Alter*, plaintiffs filed a wrongful death action arising out of a helicopter crash in Israel. *Id.* at 533. Plaintiffs argued that GARA did not apply to bar a suit stemming from

---

[1]Other courts have held that GARA applies to bar suit in American courts stemming from foreign accidents, but without expressly discussing the presumption against extraterritoriality. *See Bain ex rel. Bain v. Honeywell Int'l, Inc.*, 167 F. Supp. 2d 932, 937 (E.D. Tex. 2001) (GARA bars tort claims brought by survivors of victim who died in a helicopter crash in Canada); *Campbell v. Parker-Hannifin Corp.*, 82 Cal. Rptr. 2d 202, 209-10 (Cal. Ct. App. 1999) (GARA barred claim arising out of accident occurring in Australia).

an accident occurring in a foreign country. *Id.* at 541. The district court rejected this argument, noting that all of the cases applying the presumption against extraterritoriality dealt with statutes that create a cause of action rather than statutes that preclude claims. *Id.* (finding no "authority which holds that a federal statute barring enforcement of claims in courts of the United States bars only claims arising within the United States").[2] The court further pointed out that "[p]laintiff's interpretation of GARA would have the anomalous effect of preventing litigants from bringing an action in the United States for an accident occurring in the United States while allowing litigants to bring the same action in the United States if the accident occurred abroad." *Id.* We find this reasoning persuasive and supportive of our holding that a statute that does not regulate conduct occurring abroad does not implicate the presumption against extraterritoriality.

Our approach is consistent with the case law applying the presumption against extraterritoriality. Uniformly, the cases invoke the presumption when applying a statute would have the effect of regulating specific conduct occurring abroad. *See Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 173-74 (1993) (deportation of aliens from international waters); *Smith*, 507 U.S. at 203-04 (federal tort claims arising in Antarctica); *Aramco*, 499 U.S. at 248-51 (employment discrimination in Saudi Arabia); *Foley Bros. v. Filardo*, 336 U.S. 281, 285-86 (1949) (minimum overtime pay provisions for employees working in Iraq and Iran); *United States v. Palmer*, 16 U.S. (3 Wheat.) 610 (1818) (anti-piracy laws in international waters); *ARC Ecology*, 411 F.3d at 1097 (environmental assessment in Philippines); *Gushi Bros. Co. v. Bank of Guam*, 28 F.3d 1535, 1542-43 (9th Cir. 1994) (banking regulation in Marshall Islands); *Subafilms, Ltd. v. MGM-Pathe*

---

[2]We emphasize that our decision is not premised on a categorical distinction between a remedial and defensive statute. Rather, the inquiry goes to whether a specific statute's application would effectively regulate conduct occurring abroad.

*Commc'ns Co.*, 24 F.3d 1088, 1095-97 (9th Cir. 1994) (en banc) (copyright infringement in foreign distribution of films).

On the other hand, when a statute regulates conduct that occurs within the United States, the presumption does not apply. *See Pakootas*, 452 F.3d at 1077-78 (holding that, since the Comprehensive Environmental Response, Compensation, and Liability Act regulates the actual release of hazardous materials, no issue of extraterritoriality arises when a company arranged for disposal in Canada of hazardous substances, but the release itself occurred within the United States). Here, Congress passed a statute regulating the ability of a party to bring a suit against a general aviation aircraft manufacturer in American courts. Following these cases, GARA itself does not regulate any conduct that occurred abroad, so the presumption does not apply.

Despite appellants' assertions, the Second Circuit's opinion in *Kollias v. D & G Marine Maintenance*, 29 F.3d 67 (2d Cir. 1994), does not compel a contrary result. The *Kollias* court grappled with the issue of whether the Longshore and Harbor Workers' Compensation Act ("LHWCA") applied in a suit brought by an employee injured on the high seas. *Id.* at 68. The court held that the presumption did apply, *id.* at 72, but that it was overcome by Congress's clear indication that it intended for the LHWCA to apply outside the United States. *Id.* at 73. Appellants rely on dicta in *Kollias* noting that all statutes, "without exception, be construed to apply within the United States only, unless a contrary intent appears." *Id.* at 71. The court made this statement in response to the defendants' contention that the presumption against extraterritoriality should categorically not apply to maritime legislation. *Id.* Contrary to appellants' assertions, our holding will not create any exception to the presumption. Rather, if a statute does not regulate conduct occurring abroad, then the presumption against extraterritoriality is not even implicated. This is entirely consistent with the Second Circuit's reasoning in *Kol-*

*lias*, where the court invoked the presumption when the statute at issue governed conduct that took place in international waters. *See id.* at 70-73.

## *CONCLUSION*

For the foregoing reasons, we affirm the district court's final judgment.

AFFIRMED.