**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MIRNA MCAULIFFE; THOMAS
MCAULIFFE, Individually and as
Co-Personal Representatives of the
Estate of Ryan McAuliffe, deceased,

> *Plaintiffs - Appellants*,

v.

ROBINSON HELICOPTER
COMPANY,

> *Defendant - Appellee*.

No. 24-6086

D.C. No.
1:21-cv-00193-
HG-WRP

OPINION

Appeal from the United States District Court
for the District of Hawaii
Helen W. Gillmor, District Judge, Presiding

Argued and Submitted October 8, 2025
Submission Vacated November 6, 2025
Resubmitted April 14, 2026
Honolulu, Hawaii

Filed April 21, 2026

Before: M. Margaret McKeown, Michelle T. Friedland, and
Jennifer Sung, Circuit Judges.

Opinion by Judge McKeown;
Partial Dissent by Judge Friedland

## SUMMARY[*]

### General Aviation Revitalization Act of 1994

The panel affirmed in part and reversed in part the district court's summary judgment in favor of Robinson Helicopter Company in plaintiffs' suit arising out of a helicopter sightseeing crash that killed their daughter, and remanded.

The General Aviation Revitalization Act of 1994 ("GARA") bars wrongful death actions against general aviation aircraft manufacturers commenced more than eighteen years after the aircraft has been delivered to the first purchaser. The helicopter's main rotor hub and main rotor blades—the main culprits in the crash—were replaced with identical parts from Robinson in 2018, slightly more than eighteen years after Robinson manufactured the original helicopter.

GARA Section 2(a)(2) (the "rolling provision") restarts the eighteen-year repose period for newly replaced parts. GARA Section 2(b)(1) (the "fraud exception") eliminates the repose period where the manufacturer has knowingly misrepresented, concealed, or withheld required

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and material information from the Federal Aviation Administration.

The panel held that the district court erred in requiring plaintiffs to show that the main rotor hub and main rotor blades had been substantively altered from the original parts in order to get the benefit of the rolling provision. The statute does not require substantive alteration. Because the district court's misinterpretation permeated its causation analysis, the panel remanded for the court to address causation anew.

The panel held that the district court did not err in concluding that plaintiffs failed to make particularized allegations or offer evidence that would permit them to benefit from the fraud exception.

Finally, the panel held that the district court did not abuse its discretion in denying plaintiffs leave to amend their complaint.

Dissenting in part, Judge Friedland joined the majority in concluding that plaintiffs failed to offer evidence of fraud and that the district court did not abuse its discretion in denying plaintiffs' motion to amend their complaint. However, this court has previously interpreted GARA to require that a replacement part have a material alteration before the statute of repose can restart. Because there was no material alteration in the replaced parts here, she would affirm the district court's summary judgment in favor of Robinson Helicopter Company.

**COUNSEL**

Thomas G. Siracusa (argued) and Joseph A. Power Jr., Power Rogers LLP, Chicago, Illinois; Aimee M. Lum (argued), Mark S. Davis, and Michael K. Livingston, Davis Levin Livingston, Honolulu, Hawaii; for Plaintiffs-Appellants.

Tim A. Goetz (argued) and Cathrine E. Tauscher, Robinson Helicopter Company, Torrance, California; Gary G. Grimmer, GGG Hawaii Law Inc. ALC, Honolulu, Hawaii; for Defendant-Appellee.

**OPINION**

McKEOWN, Circuit Judge:

The crux of this appeal, which arises out of a fatal helicopter sightseeing crash in Kailua, Hawaiʻi, rests on an interpretation of the General Aviation Revitalization Act of 1994 ("GARA"). GARA bars wrongful death actions against general aviation aircraft manufacturers commenced more than eighteen years after the aircraft has been delivered to the first purchaser. GARA §§ 2(a), 3(3), Pub. L. No. 103-298, 108 Stat. 1552 (1994) (codified at 49 U.S.C. § 40101 note). The helicopter's main rotor hub and main rotor blades—the alleged culprits in the crash—were replaced with identical parts from Robinson Helicopter Company in 2018, slightly more than eighteen years after Robinson manufactured the original helicopter.

There is no dispute that GARA governs the case. This appeal concerns two statutory carveouts. The first is Section

2(a)(2) ("the rolling provision"), which restarts the eighteen-year repose period for newly replaced parts. *Id.* § 2(a)(2). The second is Section 2(b)(1) ("the fraud exception"), which eliminates the repose period where the manufacturer has knowingly misrepresented, concealed, or withheld required and material information from the Federal Aviation Administration ("FAA"). *Id.* § 2(b)(1).

In their negligence and strict liability claims against Robinson, Mirna and Thomas McAuliffe invoked both carveouts in connection with the crash that killed their daughter, Ryan. The district court concluded that neither the rolling provision nor the fraud exception permits the McAuliffes to evade the GARA repose period and granted Robinson's summary judgment motion.

At summary judgment, the district court required the McAuliffes to show that the main rotor hub and main rotor blades had been substantively altered from the original parts in order to get the benefit of the rolling provision. That interpretation does not comport with the statute's plain meaning and was thus in error. The statute does not require substantive alteration. Because the district court's misinterpretation permeated its causation analysis, we remand for the court to address causation anew. The district court did not err, however, in concluding that the McAuliffes failed to make particularized allegations or offer evidence that would permit them to benefit from the fraud exception. Nor did the district court abuse its discretion in denying the McAuliffes' motion to amend. We therefore affirm in part, reverse in part, and remand.

## Background

On the morning of April 29, 2019, the helicopter departed from Honolulu's Daniel K. Inouye International

Airport for a sightseeing tour.  Aboard the helicopter were the pilot, Ryan McAuliffe, and another passenger.  During the tour, the helicopter flew into an unstable weather environment, experienced an in-flight breakup, and crashed onto a street in Kailua, Hawaiʻi.  There were no survivors. The parties dispute the cause of the crash.

Robinson manufactured the helicopter in 2000, more than eighteen years before the incident.  It received a certificate of airworthiness on December 7, 2000, and delivered the helicopter to 44 Helicopter, Inc. the next day. The helicopter's main rotor hub and main rotor blades were replaced with Robinson serialized components on December 14, 2018.

The McAuliffes sued Robinson and other defendants on April 20, 2021, and asserted claims for negligence, strict products liability, and failure to warn under Hawaiʻi law. Robinson timely raised the GARA statute of repose defense in its answer.  Although the McAuliffes amended their complaint, those amendments did not contain new allegations that would overcome GARA.

In the course of this litigation, the McAuliffes filed four unopposed motions to extend expert and discovery deadlines and to continue the trial date, which the district court granted.  After Robinson moved for summary judgment, the McAuliffes sought to amend the scheduling order for purposes of amending the complaint once again.

In opposing the summary judgment motion, the McAuliffes argued that GARA's eighteen-year repose period restarted as to the "main rotor system, which includes the main rotor hub and blades" because the hub and blades had been replaced only a few months before the crash.  The McAuliffes relied on the opinions of three experts in their

claims against Robinson.  These experts opined that the main rotor system, both with the original hub and blades and after identical replacements were installed, was too light and resulted in low rotor inertia, pilot overcontrolling, excessive tilting and stress on the teeter stops, and low-G conditions, all of which allegedly contributed to a catastrophic event called mast bumping.  Mast bumping occurs when a helicopter's blades diverge from their normal plane of rotation, make contact with the mast, and result in an in-flight breakup.  Robinson did not offer up any expert testimony.

Relying on its interpretation of GARA, the district court granted the motion for summary judgment and denied the motion to amend.

## Analysis

We review de novo the district court's grant of summary judgment "based upon . . . a disputed construction of [GARA,] a federal statute." *Blazevska v. Raytheon Aircraft Co.*, 522 F.3d 948, 951 (9th Cir. 2008).  Applicable to "general aviation aircraft," [1] GARA "limits aircraft manufacturers' liability to eighteen years after an aircraft is delivered." *Id.*  Congress enacted the statute to limit "the long tail of liability" imposed upon general aviation aircraft manufacturers. *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1084

---

[1] A "general aviation aircraft" is "any aircraft for which a type certificate or an airworthiness certificate has been issued by the Administrator of the Federal Aviation Administration, which, at the time such certificate was originally issued, had a maximum seating capacity of fewer than 20 passengers, and which was not, at the time of the accident, engaged in scheduled passenger-carrying operations as defined under regulations in effect under [the Federal Aviation Act of 1958] at the time of the accident." GARA § 2(c).

(9th Cir. 2001).  GARA's protections are considerable.  We have explained that the statute "acts not just as an affirmative defense, but instead 'creates an explicit statutory right not to stand trial.'"  *Blazevska*, 522 F.3d at 951 (quoting *Est. of Kennedy v. Bell Helicopter Textron, Inc.*, 283 F.3d 1107, 1110 (9th Cir. 2002)).

GARA provides, in relevant part:

> Section 2.  Time limitations on civil actions against aircraft manufacturers.
>
> (a) IN GENERAL.—Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred—
>
> > (1) after the applicable limitation period beginning on—
> > > (A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or
> > > (B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft; or
> >
> > (2) with respect to any new component, system, subassembly, or other part which

replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

(b) EXCEPTIONS.—Subsection (a) does not apply—

(1) if the claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer with respect to a type certificate or airworthiness certificate for, or obligations with respect to continuing airworthiness of, an aircraft or a component, system, subassembly, or other part of an aircraft knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or the component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered . . . .

GARA § 2.

While considerable, GARA's protections are not absolute. In the statute, Congress created a scheme to permit civil actions against general aviation aircraft manufacturers to proceed to trial in certain rare circumstances: for instance, where the accident was allegedly caused by a new or replaced part (as in the rolling provision), or where a manufacturer has knowingly misrepresented, concealed, or withheld certain material and relevant information from the FAA and thereby caused an accident (as in the fraud exception).

## I. The Rolling Provision

GARA's eighteen-year repose period "begins anew if the death, injury, or damage is caused by any 'new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft.'" *Caldwell v. Enstrom Helicopter Corp.*, 230 F.3d 1155, 1156 (9th Cir. 2000) (quoting GARA § 2(a)(2)). The statute's protections extend "to the manufacturer of the accident aircraft, including the manufacturer of any of its component parts," and irrespective of whether they are two different manufacturers or the same one. *U.S. Aviation Underwriters Inc. v. Nabtesco Corp.*, 697 F.3d 1092, 1098 (9th Cir. 2012) (citation modified).

To satisfy the rolling provision's requirements, the McAuliffes had to show that each of the old main rotor hub and main rotor blades constitutes a "component, system, subassembly, or other part of the aircraft"; that the new main rotor hub and main rotor blades are "new component[s], system[s], subassembl[ies], or other part[s]" that "replace[d]" the old ones; and that the hub and blades caused the accident. GARA § 2(a). The parties agree that the old

and the new main rotor blades and main rotor hub are either "components" or "parts" of the helicopter.[2] The parties disagree, however, about what it means for one part to have replaced another, and whether the district court correctly concluded that a replacement requires a "substantive alteration" to restart the liability clock.

GARA's text is clear. The statute applies to "any new component, system, subassembly,"—which is not the case here as there is no new component, system, or subassembly—"*or other part which replaced another component, system, subassembly, or other part*"—which is precisely what happened here. GARA § 2(a)(2) (emphasis added). On its own terms, then, GARA does not require a showing of any degree of alteration, and the district court's reading of a "substantive alteration" requirement into the statute was legal error.

GARA's "[l]egislative history confirms our reading of the statute if such confirmation is needed." *Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893, 903 (9th Cir. 2012). To be sure, Congress enacted GARA out of a concern about excessive tort liability for general aviation aircraft manufacturers. *See General Aviation Revitalization Act of 1993: Hearing on H.R. 3087 Before the Subcomm. on Econ.*

---

[2] There initially appeared to be disagreement between the parties about whether the rolling provision extends to the entire main rotor system, or just to the main rotor hub and main rotor blades. In their reply brief, however, the McAuliffes acknowledge that the rolling provision restarts the GARA repose period only as to the "new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part" and which allegedly caused the accident. GARA § 2(a)(2). The repose period therefore does not restart as to the components or parts of the main rotor system that have not been replaced.

& *Com. L.*, 103d Cong. 18 (1994) (statement of Rep. Hamilton Fish) ("The concept of the legislation is reasonable: why should the original manufacturer of an aircraft be held liable *indefinitely* when after many years the product may very well not even contain an original component[?]").  But Congress also wanted to allow certain civil actions against defendants like Robinson to proceed to trial: "Suits clearly may be brought beyond the initial term of . . . 18 years, because that statute of repose begins to run at the time the replacement part is installed."  *Id.*  Congress offered up an example that is analogous to the situation here, reasoning that "if the original piston engine is replaced, the new piston engine would have a 15-year statute of repose commencing with its replacement."  H.R. Rep. No. 103–525, pt. II, at 7 (1994).[3]  The legislative history suggests that the rolling provision helps to dilute GARA's strong medicine.  *Id.* pt. I, at 3 ("[GARA] strikes a fair balance between manufacturers, consumers, and persons injured in aircraft accidents.").    That history also suggests that Congress wrote the word "new" into the rolling provision to clarify that the eighteen-year repose period would not restart when a used part replaces an original part of the aircraft.  As the legislation's chief sponsor in the House of Representatives explained:

> There is one small point I would like to clarify with regard to component parts, which

---

[3] An earlier version of GARA contemplated a fifteen-year rather than an eighteen-year repose period.  *See* Jennifer L. Anton, Comment, A Critical Evaluation of the General Aviation Revitalization Act of 1994, 63 J. Air L. & Com. 759, 769 n.78 (1998) (explaining that there is "virtually no legislative history describing the reason for increasing the repose period from 15 to 18 years").

are covered under the bill. The bill covers new component parts installed as replacements for original components. The component, when newly manufactured, receives the same limitation period as the airplane it is installed on.

For example, a used propeller which has 3 years left on its applicable limitation period would still have only 3 years, if installed in its used condition on a different airplane.

140 Cong. Rec. H14466 (daily ed. June 27, 1994) (statement of Rep. Dan Glickman). The legislative history confirms our conclusion that Congress did not write a substantive alteration requirement into the statute when it added the word "new" into the rolling provision. In GARA, "new" does not mean "substantively different," and "replaced" means exactly what is says—"replaced."

We first addressed the rolling provision in *Caldwell*, 230 F.3d at 1156–58. Calwell argued that a flight manual, which had been revised within the eighteen-year repose period, "was defective because it did not include a warning that the last two gallons of gasoline in the fuel tanks would not burn." *Id*. at 1156. We held that such a "revised aircraft manual can fall within GARA's rolling provision" because it is "a part of the aircraft" and not "a separate product." *Id.* at 1157. We also cautioned that a "revision to the manual does not implicate GARA's rolling provision . . . unless the revised part 'is alleged to have caused [the] death, injury, or damage.'" *Id.* at 1158 (quoting GARA § 2(a)(2)). But the revision, we remarked, must be more than "mere[ly] cosmetic . . . (like changing the manual's typeface)." *Id.* We concluded that if a defendant "substantively altered, or

deleted, a warning about the fuel system from the manual within the last 18 years, and it is alleged that the revision or omission is the proximate cause of the accident, then GARA does not bar the action." *Id.* In other words, we held that a modification of a flight manual can constitute a replacement of a part for purposes of the rolling provision.

Our decision in *Caldwell* addressed a distinct question from the one in this appeal. *See id.* at 1157–58. There is no modification at issue here. The question is whether the removal of the old main rotor hub and old main rotor blades and the installation of new ones is a "replace[ment]" within the meaning of GARA. GARA § 2(a)(2). It is hard to conclude that it is anything else.[4]

The district court nonetheless extended the language of *Caldwell* to conclude that there was "no evidence that any replacement part was substantively altered such that the rolling provision of GARA applies." The court also held that "[i]n design defect cases, the new part or component must substantively alter the aircraft's design." Because the McAuliffes did not provide evidence that the new components or parts substantively altered the helicopter's

---

[4] We are not persuaded by our dissenting colleague that "our decision in *Caldwell* requires a different reading." Dissent at 19. In that case, we decided how much and what kind of change to a "warning about the fuel system" in a "revised flight manual" was needed before the manual could be considered "replaced." *Caldwell*, 230 F.3d at 1158. The dissent also resolves a question that the parties never asked us to decide. We express no view about what it might mean for an interpretation of GARA to embrace a common law tort principle that treats Robinson differently as an aircraft manufacturer, as opposed to a replacement parts manufacturer. Dissent at 20–21 n.1. Forfeited or not, that position is not one that Robinson advanced, and we decline to address it in the first instance.

design, the court granted Robinson's motion for summary judgment.  Because the statute does not speak of substantive alteration, the district court erred in modifying the rolling provision's requirements.

The district court then went on to import this "substantive alteration" requirement into the causation analysis: "The replacement of those parts alone is not enough to trigger a new period of repose where the parts themselves were not defective and the design was not substantively altered."  Because this premise is defective, the causation analysis cannot stand.   The district court appropriately imposed a causation requirement, however, as the rolling provision only restarts the repose period where the "other part which replaced another component, system, subassembly . . . is alleged to have caused . . . death, injury, or damage."  GARA § 2(a)(2).  We have interpreted the causation requirement as one of proximate cause. *Caldwell*, 230 F.3d at 1158.  On remand, the district court should address whether the McAuliffes have provided sufficient evidence that the main rotor hub or main rotor blades were the proximate cause of the accident.

## II. The Fraud Exception

The fraud exception provides that GARA does not apply where a manufacturer misrepresents, conceals, or withholds certain "required information that is material and relevant to the performance or the maintenance or operation of [a general aviation] aircraft, or the component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered."   GARA § 2(b)(1).  Immanent in the fraud exception is a particularity requirement. *See Crouch v. Honeywell Int'l, Inc.*, 720 F.3d 333, 344 (6th Cir. 2013) (requiring that a plaintiff "plead

*specific* facts" to benefit from GARA's fraud exception). Of course, the complaint also had to conform to the particularity requirements of Federal Rule of Civil Procedure 9(b): "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

The McAuliffes failed to allege the elements of the fraud exception with the requisite specificity. Generalized averments that, for example, Robinson "represented that the accident helicopter model and its components and parts were safe for use and non-defective" are not enough to overcome GARA's significant obstacles. The complaint did not contain any particularized allegations about the "time, place, and specific content of the false representations" to the FAA. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir. 1989)). Similarly, the McAuliffes' allegations that Robinson "failed to notify the FAA, the NTSB, [and] other agencies of [the] government . . . that there were defects in the design and/or manufacture of the accident helicopter" put the cart before the horse by requiring Robinson to defeat the merits of the McAuliffes' negligent misrepresentation claim in order to defeat their fraud exception argument. The complaint also fails to explain how the alleged misrepresentations were "material and relevant" to the performance, maintenance, or operation of the main rotor hub, the main rotor blades, or any other part of the helicopter and critically omits any specific allegations about how any such misrepresentations are "causally related to the harm which the [McAuliffes] allegedly suffered." GARA § 2(b)(1).

The deficiencies in the McAuliffes' pleadings were carried over to their presentation at summary judgment. *See*

GARA § 2(b)(1) (requiring that a plaintiff "prove[]" the specific facts alleged). The McAuliffes' experts conclude summarily and without particular basis that "Robinson misrepresents to the FAA, NTSB, and the public that the sole cause of the R44 in-flight breakups" is pilot error and not the allegedly defective design of the main rotor system. The McAuliffes also contend that Robinson does not maintain its own accident records "[i]n furtherance of its concealment and misrepresentation." These conclusory allegations are plainly insufficient. Indeed, the record is devoid of any specific evidence about Robinson's fraud on the FAA or the NTSB. The district court therefore correctly concluded that the McAuliffes failed at the summary judgment stage to present evidence that would satisfy the fraud exception's requirements.

## III. Leave to Amend

The district court did not abuse its discretion when it concluded that the McAuliffes had "not been diligent in pursuing their claim or in seeking to amend [their complaint]" as required under Rules 15 and 16. *See* Fed. R. Civ. P. 15(b), 16(b); *see Wilkins v. United States*, 279 F.3d 782, 785 (9th Cir. 2002) (denial of leave to amend reviewed for abuse of discretion). Nor did the district court abuse its discretion when it concluded that permitting additional amendment would unduly delay the trial and severely prejudice the defendants. *See* Fed. R. Civ. P. 15. That motion came in response to the motion for summary judgment. The entirety of the McAuliffes' proposed amendments to the complaint sought the benefit of GARA's fraud exception. But Robinson asserted the GARA defense in its answer in July 2021, more than two and a half years before the McAuliffes sought to amend. From the get-go,

the McAuliffes knew that they had to overcome GARA one way or another, and they did not act diligently in doing so.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

The parties shall each bear their own costs on appeal.

---

FRIEDLAND, Circuit Judge, dissenting in part:

I join the majority in concluding that the McAuliffes failed to offer evidence of fraud and that the district court did not abuse its discretion in denying the McAuliffes' motion to amend their Complaint. But our court has previously interpreted the General Aviation Revitalization Act of 1994, Pub. L. No. 103-298, 108 Stat. 1552 ("GARA") (codified at 49 U.S.C. § 40101), to require that a replacement part have a material alteration before the statute of repose can restart. *Caldwell v. Enstrom Helicopter Corp.*, 230 F.3d 1155, 1156-58 (9th Cir. 2000). Because there was no material alteration in the replaced parts here, I would affirm the district court's grant of summary judgment in favor of Robinson Helicopter Company ("Robinson").

GARA imposes an 18-year statute of limitations on claims against manufacturers, which are typically tort claims for negligence, design defects, and products liability. GARA §§ 2(a), 3(3). Under Section 2(a)(2) of GARA, however, that period restarts

> with respect to any *new* component, system, subassembly, or other part which *replaced* another component, system, subassembly, or other part originally in, or which was added

> to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

GARA § 2(a)(2) (emphasis added).  The majority contends that the plain meaning of Section 2(a)(2) is clear, requiring only that one part replace another to restart the 18-year statute of repose.  But our decision in *Caldwell* requires a different reading.

In *Caldwell*, the plaintiffs sued after a helicopter ran out of usable fuel and crashed, killing the pilot and a passenger. 230 F.3d at 1156.  The plaintiffs alleged that the helicopter's flight manual, which had been revised and replaced within the prior 18 years, was defective because it did not warn pilots that the last two gallons of fuel would not burn.  *Id.* at 1156-57.  Our court concluded that, had a new replacement manual contained only "cosmetic changes (like changing the manual's typeface)," rather than any substantive changes, the GARA repose period would not have restarted.  *Id.* at 1158.   But we explained that if the defendant had "substantively altered, or deleted, a warning about the fuel system from the manual within the last 18 years, and it [were] alleged that the revision or omission [wa]s the proximate cause of the accident, then GARA [would] not bar the action."  *Id.*  By holding in *Caldwell* that a replacement manual must be "substantively altered" and not merely that the manual be replaced, we interpreted Section 2(a)(2) of GARA to necessitate more than a mere replacement part—it requires (1) a material change in the part, whether through a

design change or a manufacturing problem, and (2) that the change be a cause of the accident.[1]

---

[1] Our court's reading of GARA in *Caldwell v. Engstrom Helicopter Corp.*, 230 F.3d 1155 (9th Cir. 2000), is also consistent with the common law tort principle that manufacturers of components are not liable for a design defect when they manufacture a component exactly as designed by the manufacturer of, or customer for, the larger product that the component goes into. *See, e.g., S. A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1237-38 (9th Cir. 1982) (holding that a component manufacturer was not liable under a design defect theory where it provided a product to Boeing in accordance with Boeing's specifications); *Thompson v. Hirano Tecseed Co., Ltd.*, 456 F.3d 805, 809-10 (8th Cir. 2006) (collecting cases) (agreeing with "the general rule that a manufacturer is not liable for design defects when it builds a product in accordance with customer specifications").

Because design defect claims generally cannot be brought against component manufacturers that follow the original design regardless of any repose period or lack thereof, the only lawsuits that could proceed against component manufacturers during the 18-year period would be for a manufacturing defect that caused an accident, or a new defective design that caused an accident. As a result, it would make little sense if Section 2(a)(2) of GARA did not require a material alteration before the statute of repose could restart against a component manufacturer. Any lawsuit not alleging a material alteration would already be barred for other reasons, and there is no reason to think that Congress wanted GARA to create potential confusion by restarting a limitations period for a type of claim that typically did not exist at all. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 335 (2020) ("[W]e generally presume that Congress legislates against the backdrop of the common law.").

Here, Robinson was both the original manufacturer and the replacement part manufacturer. Robinson is being sued only in its role as the replacement part manufacturer, so it is possible that Robinson could have invoked this tort principle as a defense to the McAuliffes' design defect theory, regardless of the meaning of GARA. Robinson did not raise such a defense, however, so at least for purposes of this appeal,

To succeed on their theory that the statute of repose restarted when Robinson replaced the main rotor hub and main rotor blades, *Caldwell* indicates that the McAuliffes were required to show that those components were materially altered in some way, whether through a new design or a manufacturing defect.  It is not sufficient to say that those parts were replaced, just as it would not have been sufficient in *Caldwell* if the flight manual had been replaced with a substantively identical flight manual.  Yet the McAuliffes conceded that the replacement rotor hub and rotor blades were identical to the parts they replaced.  Under the reading of GARA required by precedent, that means Robinson was entitled to summary judgment.

For the foregoing reasons, I respectfully dissent in part.

---

the tort principle has been forfeited and does not represent a potential alternative ground for affirmance.